NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PATRICK BLAND, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 03-6091 (SRC) |
| v. | : | |
| | : | OPINION |
| DONALD WINANT, et al. | : | |
| Defendants. | : | |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on motions for summary judgment by Donald Winant, the Councilmembers of the Borough of Dumont, the Police Department of the Borough of Dumont, the Chief of Police of the Borough of Dumont, Jospeh Rizza, Christopher McMullen, Michael Murphy, and Frank Gagliardi (collectively "Defendants") [docket # 24, 36]. The Plaintiff, Patrick Bland ("Bland"), has filed a brief in opposition [docket # 40] and the Defendants have filed a reply brief [docket # 46]. The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **GRANTS** Defendants' motion on the federal claims in Count V of Bland's Complaint and remands the remainder of the case to state court on the grounds that, absent the federal claims in Count V, this Court lacks subject matter jurisdiction to adjudicate Bland's remaining state law claims.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Patrick Bland began working as a police officer for the Borough of Dumont (the "Borough" or "Dumont") in 1978.  During his tenure, Bland has attempted, without success, to rise in the ranks of the police force.  Most recently, in October 2003, Bland did not receive a sought-after promotion to the rank of sergeant.  Instead the promotion went to fellow officers Jospeh Rizza ("Rizza"), Michael Murphy ("Murphy"), and Frank Gagliardi ("Gagliardi").  Bland contends that he was not promoted because of (1) a whistleblowing incident in 2000, (2) complaints he made to Mayor Donald Winant ("Winant") over ten years ago that the Police Department lacked sufficient resources, and (3) his well-known political activities on behalf of the Dumont Democratic Party.  The Court recounts these incidents in the light most favorable to Bland.

In July 2000, a councilman of the Borough of Dumont, Councilman Fredericks ("Fredericks"), was pulled over twice by Officer Vincent Tamburro on suspicion for Driving While Intoxicated ("DWI").  The second time, Officer Tamburro arrested Fredericks and drove him to police headquarters for processing.  However, Fredericks was not formally charged with DWI that night.  At some point then-Mayor Winant came to the police station and drove Fredericks home.  According to Bland, Chief of Police Michael Affrunti ("Affrunti") had suspended a breathalyzer test on Fredericks and called Mayor Winant at home.  Officer Tamburro related the incident to Bland because he was the Policeman Benevolent Association ("PBA") delegate.  Bland then contacted the Bergen County Prosecutors Office and requested that they investigate the matter.  As a result of Bland's tip, Fredericks was charged with DWI and Affrunti was forced to resign.

Bland also testified that in 1992 he had complained to Mayor Winant that the Borough Council was not providing adequate equipment and manpower for the police department. Bland told Winant that police vehicles were not being properly cared for and that when officers were on patrol they could not communicate with police headquarters from several areas within the Borough.

Finally, Bland contends that Mayor Winant and the Republican-dominated Borough Council retaliated against him as a result of his political activities. Mayor Winant served as the Republican Mayor of the Borough from 1992 until 2005 and was a close friend and political ally of Councilman Fredericks. During the same period, Bland worked on behalf of the Democratic Party of Dumont. Specifically, he distributed literature of behalf of Democratic political candidates. According to Bland, Mayor Winant and the entire Council were aware of his political activities. At one point Frank Canonica, the Vice-President of the Dumont Republican Club, told Bland that his political activity was disgraceful and that he did not belong in politics because he was a police officer. In October 2003, prior to the Borough elections, the new Chief of Police, Chief Venezio, told Bland that he would never be promoted as long as Winant was Mayor. It was at that time that Rizza, Murphy, and Gagliardi were promoted to the sergeant position to which Bland claims he was entitled.

Bland filed a complaint in the Superior Court of New Jersey in November 2003, alleging, inter alia, that Defendants deprived him of his rights under the Constitution of the United States and the Constitution of the State of New Jersey, and violated the New Jersey Law Against Discrimination and the New Jersey Conscientious Employee Protection Act. The Complaint seeks to rescind the promotions of Rizza, Murphy, and Gagliardi because, according to Bland's

allegations, they were promoted to positions that were not properly established under the laws of the State of New Jersey. Bland also asks that the Court order the Defendants to promote him within the Dumont Police Department. Defendants removed this action to federal court and now seek summary judgment on all counts.

## II.     STANDARD FOR SUMMARY JUDGMENT

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Penn. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363

(3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold").

### III.   DISCUSSION

In addition to his various state law claims, Bland asserts federal claims under 42 U.S.C. §§ 1983, 1985, 1986 and 1988, the sections of the United States Code that provide a private cause of action for plaintiffs who claim that they have been deprived of their civil rights under the Constitution of the United States.

A.   <u>Bland's § 1983 Claims</u>

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (U.S. 1988). Bland's complaint states a cause of action for violation of his procedural due process rights. Bland also argues that Defendants retaliated against him in violation of the First Amendment when they failed to promote him as a result of his "whistleblowing" and political activities.

#### 1.   **Violation of Bland's Procedural Due Process Rights**

Count V of Bland's Complaint, which alleges that his civil rights were violated under § 1983, incorporates his earlier allegations that Defendants failed to promote him. The Court therefore construes Count V to state a claim for a procedural due process violation. Defendants argue that they are entitled to summary judgment on this claim because Bland cannot have a property interest in a position that, by his own admission, was not properly created under the

5

laws of the State of New Jersey

"To have a property interest in a benefit that is protected by procedural due process, 'a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" Pollock v. City of Ocean City, 968 F. Supp. 187, 190 (D.N.J. 1997) (quoting Board of Regents v. Roth, 408 U.S. 564, 569-72 (1972)). Thus, for an employee to "have a property interest in a job or benefit, [he] must have a legitimate claim of entitlement, not just a unilateral expectation." Latessa v. New Jersey Racing Comm'n, 113 F.3d 1313, 1318 (3d Cir. 1997) (citing Roth, 408 U.S. at 577). Whether the plaintiff possesses a property interest is a question of state law because property interests are created and defined by state law sources. See Roth, 408 U.S. at 569-72; Clark v. Township of Falls, 890 F.2d 611, 617 (3d Cir. 1989) ("property interests are created and defined by state law").

On March 29, 2001, the Supreme Court of New Jersey issued a prospective decision which held that N.J. STAT. ANN. § 40A:14-118 requires that police positions can be established only by municipal ordinances. Reuter v. Borough Council, 167 N.J. 38, 41-42 (2001). Bland and Defendants agree that the sergeant position for which Bland was passed over in favor of Defendants Rizza, Murphy, and Gagliardi was not properly created pursuant to a municipal ordinance as required by Reuter. Since the sergeant position to which Bland sought to be promoted does not exist as a matter of state law, it follows that he can have no property interest in it, and no procedural due process claim.

### 2. Retaliation Against Bland for Whistleblowing in Connection with the Fredericks DWI

Bland contends that Defendants violated his First Amendment right "to speak on matters of public concern without fear of retaliation." Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001). According to Bland, the prosecutor's office leaked the fact he had been the one to disclose the Fredericks DWI incident, which provoked Mayor Winant and the Borough Council to retaliate against him by refusing to promote him.

"A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting Garcetti v. Ceballos, 126 S. Ct. 1951, 1958 (2006)). The Supreme Court held last term in Garcetti v. Ceballos that the First Amendment does not protect government employees from discipline based on speech made pursuant to their official job duties. The Supreme Court distinguished between the exercise of speech undertaken by public employees as citizens speaking out on matters of public concern and speech made within the scope of their employment responsibilities. The Supreme Court noted that "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" Garcetti, 126 S. Ct. at 1959 (quoting Connick v. Myers, 461 U.S. 138, 154 (1983)). Although public employees retain constitutional protections to engage in civic discourse, extending those protections to any statements made pursuant to their employment duties would, according to the Supreme Court, be

7

tantamount to "permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and separation of powers." Id. at 1961.

Applying the standard articulated in Garcetti to the instant case, it is clear that Bland was informed of the Fredericks DWI in his capacity as a police officer and more specifically as the PBA representative. In disclosing the Fredericks DWI to the Bergen County Prosecutor's Office, Bland took action that was at clear odds with then-Police Chief Affrunti's decision to release Fredericks without charges. The Supreme Court emphasized in Garcetti that in evaluating whether the speech in question was made pursuant to official duties "[t]he proper inquiry is a practical one. . . . and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Id. at 1961-62. Investigating and reporting crime are the core functions of a police officer. It is also the province of law enforcement to decide whether someone who has been arrested will be released or will remain in police custody. From a practical perspective, just as then-Police Chief Affrunti was acting within his discretion as Chief of Police in deciding not to charge Councilman Fredericks, Bland acted pursuant to his duties as a law enforcement officer when he reported Fredericks's DWI to the Bergen County Prosecutors Office. Both Bland's and Affrunti's decisions were made within the scope of their employment responsibilities as police officers.

Were the Court to elevate Bland's grievance to the level of constitutional significance it would invite the type judicial interference in the internal affairs of the Police Department that the Supreme Court wished to avoid in Garcetti. Indeed, it would be tantamount to investing Bland with a right to perform his job as he sees fit, subject only to judicial review. See id. at 1960

("This prospect [of First Amendment protection for government employees] . . . does not invest them with a right to perform their jobs how they see fit."). The Court is further guided by the fact that Bland's actions did not contribute to the civic discourse. See id. ("[E]mployees retain the prospect of constitutional protection for their contributions to the civic discourse."). Bland's disclosing of the Fredericks DWI to the prosecutor's office lacks a "relevant analogue to speech by citizens who are not" police officers. Id. at 1961. Bland's complaints to Mayor Winant regarding the police department's perceived equipment deficiencies likewise have no analogue to speech by private citizens. Because Bland's speech was made pursuant to his official duties as a police officer and not as a private citizen, he has failed to make out the first element necessary to show that his speech was protected by the First Amendment. See Hill 455 F.3d at 241 (requiring that a public employee speak in his capacity as a citizen in order to be protected by the First Amendment).

### 3. Retaliation Against Bland for Engaging in Political Activities

Bland also argues that Defendants retaliated against him for engaging in political activities protected by the First Amendment. Bland has presented substantial evidence that he and Defendants were political adversaries. However, Defendants point out that Bland's Complaint does not allege that Defendants retaliated against him for engaging in political activities. The closest the Complaint comes to making such an allegation is in Count III, paragraph 2, which states that "As a result of Plaintiff's age, actions and/or his affiliations Defendants have failed and refused to promote Plaintiff in violation of the Law Against Discrimination, N.J.S.A. 10:5-1 et seq."

Federal Rule of Civil Procedure 8(a) requires that a Complaint contain a short, plain

statement setting forth (1) the grounds on which the court's jurisdiction depends, (2) a claim showing the pleader's entitlement of relief, and (3) a demand for judgment for the relief sought by the pleader. FED. R. CIV. P. 8(a). The Supreme Court has held that this statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Bland's Complaint does not mention any of his political activities. Although it lists 14 separate incidents that allegedly violated his constitutional rights, none of them can reasonably be construed to assert a claim for retaliation based on Bland's political affiliations or activities even under the liberal standard of notice pleading. The Court, therefore, agrees with Defendants, and holds that a single vague reference to "affiliations," mentioned in the context of a state antidiscrimination claim, is insufficient to state a cause of action alleging a violation of Bland's First Amendment right to engage in political activities under § 1983.

To conclude, all of Bland's §1983 claims fail as a matter of law. Accordingly, the Court will grant Defendants' motion for summary judgment on all claims brought by Bland pursuant to 42 U.S.C. § 1983.

B.    Bland's §§ 1985, 1986 and 1988 Claims

Bland's brief does not address his claims brought pursuant to 42 U.S.C. §§ 1985, 1986 and 1988. Because the Court has concluded that Bland has no claim as a matter of law under § 1983 for a violation of his civil rights, his federal claims pursuant to §§ 1985, 1986 and 1988 must also fail. Bland necessarily cannot make out a claim under § 1985, which provides a federal cause of action based on a conspiracy to violate civil rights; § 1986, which allows

negligent parties to be joined in an action under § 1985; or § 1988, which allows a court to award attorney's fees to the prevailing party in a proceeding under the preceding sections. Therefore, the Court will grant Defendants' motion for summary judgment on all of Bland's federal claims.

C.      Bland's Remaining State Law Claims

As the Court will dismiss all of Bland's federal claims, it declines to exercise jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . [once] the district court has dismissed all claims over which it has original jurisdiction."). The Third Circuit has explained that "once all federal claims have been dropped from a case, the case simply does not belong in federal court." New Rock Asset Partners, L.P. v. Preferred Entity Advancements, 101 F.3d 1492, 1504 (3d Cir. 1996) (quoting Lovell Mfg. v. Export-Import Bank, 843 F.2d 725, 734 (3d Cir. 1988)). Nor are there any circumstances present which would make the exercise of the Court's discretion to retain supplemental jurisdiction appropriate. See United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966).

IV.     CONCLUSION

For the reasons set forth in this opinion, the Court **GRANTS** Defendants' motion for summary judgment on Bland's federal claims. The Court remands the case to state court for adjudication of Bland's state law claims. An appropriate order will be filed herewith.

                                                s/ Stanley R. Chesler
                                                Stanley R. Chesler, U.S.D.J.

DATE: April 27, 2007